Good morning, it may have pleased this honorable court, I'm George McCall Sechrist, Jr. from Houston. I represent Dr. Qureshi. We bring before the court a serious issue involving the recent Supreme Court cases of Ruan v. United States and United States v. Khan. In this case, based upon Judge Hoyt's instructions to the jury, the government was not required to prove nor was the jury called upon to find that Dr. Qureshi knew or intended that his defense was wrong. As the court is well aware, in light of the fact that the jury instruction does say that you must prove beyond a reasonable doubt that the defendant engaged in this activity other than for a legitimate medical purpose. Is it purpose, language of intent? I'm sorry? Purpose sounds like intent. Well, according to Ruan, that instruction with respect to 841 does not comport with the culpable mental state requirement. Because what's essential, Judge Ho, is not that a physician knowingly or intentionally dispense a controlled substance, but rather that he knew or intended that his conduct was unauthorized. And in this case, the culpable mental state requirement, although— If that language doesn't cover that? I'm sorry? I may be missing something, but why doesn't the requirement that the defendant do so for other than a legitimate medical purpose? Why is that not requiring intent? Purpose and intent sound to me quite similar. It doesn't seem to the jury that the culpable mental state of an intentionally and knowingly is imposed on the conduct element, which is acting in an unauthorized fashion. There is no dispute that a physician, and in this case, Dr. Qureshi, intentionally and knowingly dispensed the narcotics, the controlled substance, which he had authority to do because he held both a DEA and a Texas Controlled Substances Certificate. The issue is the jury was not specifically instructed that. It had to find beyond a reasonable doubt that Dr. Qureshi knew or intended that his conduct was unauthorized. As Justice Breyer made clear for the Court, the culpable mental state applies not only to the act of dispensing or distributing, but it goes down the chain to the other elements of the offense, which in this case, the gravamen would be issuing a prescription in an unauthorized manner. And as we've argued, and this is in anticipating the government's argument, which we... What about the following paragraph that says that a controlled substance is prescribed for legitimate medical purpose, and therefore lawfully, if the substance is prescribed in good faith? And then it goes on, good faith means an honest effort. The good faith instruction in this case was erroneous and only served in our view to exacerbate the problem here. The good faith instruction given by the Court was couched in terms of objective reasonableness, which the Supreme Court held is absolutely a naphtha to the culpable mental state. I get that Ruan requires intent. My point is, I mean, does Ruan say that this language in particular or language to this effect doesn't require intent? Because if I'm a layperson who's never read Ruan, this language looks like it requires me to find intent. I don't think it reaches that, and I believe that, in fact, the jury instructions in Ruan were quite similar to the ones given in this case. And specifically, I don't want to duck your question. With respect to the good faith language, the Court did give the objectively reasonable good faith language, which the Supreme Court held in Ruan basically neuters the culpable mental state and turns it into a question of negligence. So you're saying Ruan, and I obviously need to read Ruan even more carefully than, or as carefully as you have already, but you're saying Ruan not only requires intent, it characterizes jury language like this as insufficient to require intent, even though a layperson might read this and think intent. I believe that, because the bottom line is, as the Court is well aware of, the jury has to look to the Court for guidance, not to defense counsel or the prosecutor. And it's presumed under Greer v. United States that the jury will heed the trial court's instructions. And as this Court has held, if, in fact, those instructions are not adequate, then this Court cannot presume that, in fact, the jury applied the right standard to the case. We argue that not only, and as the Court is aware, we have five counts here. Count one is a conspiracy, 846 conspiracy. Counts two through five are substantive Ruan, substantive 841 counts. Ruan was an 841 issue. We contend that, in fact, the 846 conspiracy instruction is infirm as well. And the reason that is the case is because there are two culpable mental states with respect to the offense of conspiring to violate the Controlled Substances Act. There's the culpable mental state incumbent upon the prosecution to establish a defendant's joining into the conspiracy. But what the government does not recognize, or at least does not adequately address, in our view, is the second culpable mental state that's inherent in every conspiracy prosecution, which is for the government to prove beyond a reasonable doubt that the accused had the same intent to commit the object offense. Well, I'm looking at the conspiracy instruction that the judge gave. Yes, Your Honor. And he said for you to find the defendant guilty, you must prove beyond a reasonable doubt. First, an agreement. Second, defendant knew of the unlawful purpose of the agreement. Third, that he joined in the agreement willfully, that is, with the intent to further its unlawful purpose. That's what the court said. Yes, sir. Now, which part of that is deficient? What's deficient, if you will, Judge Jones, is the first element of conspiracy under Section 846, which is the purpose of the conspiracy. What the government doesn't recognize is that this is a, and you have it in front of you, the court specifically instructed the jury as follows. Title 21, Section 846 makes it a crime for anyone to conspire with someone else to commit a violation of certain controlled substance laws of the United States. In this case, he told the jury the defendant's charged with conspiring to commit a violation of Title 21, Section 846, which is a crime for any person to knowingly or intentionally distribute or dispense a controlled substance, not for a legitimate medical purpose or not in the courts. That's error. So you're going after the first part of that? Yes, Your Honor. I don't quibble with the court's use of willfulness, but that has to do with the culpable mental state relevant to whether or not the defendant joined in the conspiracy. We're not contesting that language. What do you do about the Skilling case? The Skilling case, Your Honor? Yeah. I'm sorry. And what? I was, you know, the Enron fellow. I'm well aware of the case, but I'm. I thought the court found that part of the and I may be completely misremembering, but it was counterintuitive to me that the court found some of the instructions in the case were wrong, but they they upheld the conviction anyway because of harmless error. OK, I think I don't know specifically about that. I'm eminently aware of the Skilling case. I was in the trial, but I would direct the court's attention to United States versus Martinez cited in our brief, which is a Fifth Circuit case that held that holds that the district court must accurately instruct the jury on the elements of the substantive crimes constituting the objects of the charge conspiracy. This case, it didn't happen. The jury is given verbatim within the Section 846 instruction, the very language it gave in the 841 instructions, which by by definition, we believe is directly contrary to the rule laid down by the Supreme Court in Ruan that, you know, that that's the problem. That's why we don't believe it can be harmless error. Now, I will say that, you know, the government takes the position that, well, the the the district court told the jury just what you you had indicated, that, in fact, there had to be willfulness and that the defendant had to join the conspiracy. We understand all that. But but our gripe is with respect to the first element of conspiracy, which is the agreement and with respect to the agreement, the district court, with all respect to to the Honorable Judge Hoyt, misdirected the jury as to that requirement. I asked the court to look carefully. Of course, United States versus Kahn, which is the companion case to Ruan, that case was recently decided and the court therein held that because the jury was instructed, at least in part, in the conspiracy instruction with respect to the infirm substantive law instruction as to the sole object of the conspiracy to wit to distribute or dispense drugs, that it could not be harmless. I think a case that really is is is probative is United States versus Kim, and I think it's on all fours. And which him? K.I.M, Your Honor, and we cited in the brief. In that case, the court held that the erroneous instructions as to the substantive violation, it was an illegal structuring case of right of rehafe versus United States case. The court held that the erroneous instruction as to the substantive violation and the object of the conspiracy was not salvaged by relying on use of the culpable mental state of willfully in the conspiracy instructions. It held willfully referred to the joining in the agreement, not the mens rea of the substantive offense. Well, here the government makes this argument that any error in about Rouhan in the substantive offense was cured by knowledge in the conspiracy or basically shown by the part of the conspiracy charge. I don't believe that's the case again. Well, they argue that. I understand the argument in all respect. I think they're all wet. I mean, I say that as a professional. I just don't I don't agree with their analysis. And again, in K.I.M., the court says the conspiracy instruction in K.I.M. referred to the erroneous definition of the substantive offense embodied in the substantive offense instructions, which failed to mention a requirement of proof that the defendant knew that structuring a transaction was illegal, which is exactly what we're saying here by by exclusively relying on the erroneous definition of of what constitutes an 841 violation in the conspiracy charge. This jury, our jury failed, was not provided a requirement of proof that, in fact, the defendant intended that his conduct in dispensing drugs was unauthorized. You know, that's that's the crux of it. Mr. Seacrest, I argue the error is harmless because you argued in closing that it's a case about intent. Well, I think I think it is a case about bad intent. And can jury argument cure errors in the instructions? Absolutely not. Absolutely not. This court has held the Supreme Court has held that this court has held that we have to look at the at the at the guiding words of the court. And in this case, again, the totality of the instruction provided to the jury by Judge Hoyt were those in the in the substantive counts, which we believe flat flatly violate rule on. And again, he incorporates not by reference. He specifically uses the same language again in the conspiracy instruction with respect to telling the jury what is required to establish the object of the conspiracy. Those instructions as a matter of law were flawed. So so you you advocate an entirely new trial. I do, Your Honor. Or at least vacate the conviction. Vacate the conviction. Thank you, Your Honor. Good morning, Your Honor. Sonia Ralston for the United States. I'd like to start with the defendant left off with the Kim case. To distinguish Kim, the Ninth Circuit opinion, which was on remand from a change in law based on Ratzlaff. So the Ratzlaff case establishes a very special and higher set of mens rea for certain regulatory offenses such as structuring transactions that requires not only knowledge of the facts that make one's conduct illegal, but knowledge of the regulation itself. That special type of knowledge, a double knowledge, not just it's a case in which ignorance of the law actually true of every conspiracy. No, Your Honor. So Ratzlaff and the related offenses are cases in which knowledge of the law, ignorance of the law is a defense, but almost universally otherwise, ignorance of the law is not a defense. And that's true in the drug context. So in Ratzlaff, the instruction defined the illegality as transactions designed to avoid the reporting requirement, but did not require knowledge of the, that avoiding the requirement is itself illegal. So knowledge of the knowledge of the law. Okay. But it defined the illegality as to be designed to avoid the reporting requirement. That's knowledge of the facts. That's the same as here. So you're saying this instruction isn't even illegal under RUA? The conspiracy instruction, the conspiracy instruction, I think is sufficient. It requires, and just to clarify, but you do, so does that mean you're implicit, you're conceding, you are conceding that the substantive offense instruction was erroneous? That's correct. Okay. So I think there's a difference in the way they're structured. So you would have to agree that we either vacate that or that we have to vacate this substantive convict counts. No, I think the error is harmless, Your Honor. All right. Okay. So it would have helped if you had summarized all that at the beginning. So we could go back to the conspiracy instruction. The first element of the conspiracy instruction where the defendant focuses says not only that they reached an agreement to achieve the unlawful object of the conspiracy, it spells out the unlawful object of the conspiracy. It says that they agreed to unlawfully distribute or dispense a controlled substance, not for a legitimate medical purpose or outside the usual course of professional conduct. That is to say, the agreement is to do the action for the purpose of, like with knowledge of the facts. Okay. For example, if I agree with my children that we are going to the store for ice cream, we get to the store, the children ask for ice cream, my husband gets upset, I cannot reasonably say I never agreed to buy them ice cream. Of course I did. When I agreed that we are going to the store for ice cream. Well, here Koreshi would say I was authorizing prescriptions for Norco and Soma. He would not necessarily say I was authorizing prescriptions that I knew to be illegal for Norco and Soma. I agree. That's his defense, Your Honor. If the jury believed that they wouldn't have convicted him of the conspiracy. Now you're getting the harmless error. No, Your Honor. Okay. Because under the conspiracy instruction, as it was given. So even though, I mean, you agree that this formulation violates, is there error under, for the substantive counts, but it's not error for the conspiracy. Yes. And to, to just, let me tease that out for you. So, and this is the same way the 11th circuit decided the Ron case on remand. Okay. Which is that the conspiracy requires an agreement to distribute the drugs, not for a legitimate medical purpose or outside the courts. So that is an agreement to do the act unauthorized. Okay. Not an agreement to do the act, an agreement to do the act without authorization. There is no way to make that agreement and believe that your conduct is authorized. There is no way to agree to do something unauthorized and honestly believe that your conduct is authorized. You just, it's impassable. You're saying that makes the, any error harmless, not only as to conspiracy, but also as to the substantive count or, or just to the conspiracy. So just to clarify, I think it means that the conspiracy instruction is correct. It's fine. Right. Right. It's fine. Your harmless argument is actually as to the substantive count. So you would, you, you're urging affirmance, even as you concede a potential error as to the substantive. That's correct. Yes. Yes. Can you give us a couple of cases that support your theory? Yes, Your Honor. So I think, so it's assumed for the sake of argument right now. I mean, you do agree there's a double intent requirement in conspiracy. Yes. And I, well, just to tease out how that would play out, right? He never gives you what he thinks the instruction on conspiracy should say. Right. With this double intent. It would track what is permissible after Ruan. Right. So let's, let's just say that, that they are knowingly agree to distribute drugs, knowing in the future that that conduct will be unauthorized. So they know now that later they will know it will be unauthorized. So what? But it's the future. I don't know. I mean, that doesn't, because it doesn't add anything, Your Honor to say, I know that I will know means I know, and, and which is what it says. It says, I know now, I know that this is unauthorized. I'm agreeing to do this. I know the unlawful purpose. The unlawful purpose is not to distribute drugs. It's to distribute drugs without authorization. This doesn't say, and the only word you're hanging your hat on just for the sake of argument, is unlawfully distribute. I'm looking at the instruction part one of the conspiracy, unlawfully distribute, um, uh, the control. And then it is, it's not, uh, intentionally or willfully. It's not for a legitimate purpose, medical purpose, or not in the usual course of professional practice. Well, obviously that conjunct, uh, disjunctive is not meaningful. That's not appropriate. Not for a legitimate medical purpose. You know, people can argue about what's not a legitimate medical purpose, can't they? They can, and they did hear, and the jury rejected that argument. In other words, you could have a person, uh, let's say a psychotic who comes in to the pain clinic and he's freaking out and they give him the Norco and the Soma, well, is that necessarily illegal? Not a legitimate medical purpose. Is it, does he, does he, is that an intentional violation of the law? You mean if, if the patient... Because Norco and Soma apparently, you know, make you, make you, uh, uh, high or depressed or quiet, quiet you down or something. You see what I'm saying? That doesn't mean that you know that you are doing something that is beyond the law. I can accept that there are cases where the, a doctor can distribute drugs, um, that are in fact not authorized without knowing that it is not authorized. Okay. Yes. That's what I'm trying to say. I agree. And that was the defense here. When the jury found that the defendant agreed to distribute or dispense the drugs, not for a legitimate medical purpose, the jury rejected that argument. Okay. The jury convicted him of the conspiracy because it found that he knew that the drugs were unauthorized. I thought we had a beyond a reasonable doubt. I mean, there can be other reasons why you can go not beyond a reasonable doubt, including you don't believe the government's witnesses, right? I mean, it's not necessarily jury nullification, but, um... So I think it is possible for a jury, if a jury had fully believed all of Dr. Qureshi's testimony on the instructions it was given, it would have acquitted him. Okay. Because it could not have found that he joined the agreement willfully, the agreement to dispense the drugs, not for a legitimate medical purpose, with the intent to further that unlawful purpose. I guess my, my problem is I don't see how you can defend the conspiracy instruction when the first part of it would not convict him of a, of the substantive offense, and then you say, but the conspiracy bootstraps guilt for all the substantive offenses. Okay. So I guess two responses. The first is that if the court is uncomfortable with... It's sort of like two wrongs making a right. Not quite, Your Honor, because the conspiracy instruction isn't wrong. The conspiracy instruction is, is correct because it requires all of the elements. Um, and if I can just kind of give you two examples... It says knowingly charged with conspiring to violate 841, which makes it a crime to knowingly or intentionally. Basically, the conspiracy count describes 841 correctly. Yes, Your Honor. I think I want to... 841 itself was maybe potentially flawed, but the conspiracy reference to 841 works. And then that carries over to the whole case. Yes. And if I can, if I can just like piggyback on that. So in the description of 841 in the conspiracy count, right, it says knowingly and intentionally distributes or dispenses, not for legitimate medical purpose. In the substantive count instruction itself, it mixes up the order of those. Okay. So it says dispenses, did so knowingly, did so not for an intentional purpose. So not for a legitimate purpose. So I think when you break it out in that opposite order, and this is what the court said, it was the same instruction in Ron, that that ordering tells the jury to apply the knowledge element just to the first thing and not to the third thing. And I think that's the difference, right? In the conspiracy, right? It puts the knowledge first and then the two things. And I think it's reasonable under regular English to flow that through. And I think that's bolstered by then the elements of the conspiracy that define the illegality as dispensing, not for a legitimate medical purpose. Did you make this argument in your brief? About the ordering of the, not specifically. Okay. But I think. I'm just wondering, it sounded new to me. Yeah. So the, I think, you know, we've conceded that the substantive instruction, which is the same one that was given in Ron, is insufficient. Now in the Ajay case, this court found that the conspiracy instruction, which was exactly the same as the one here, was sufficient, and that that filled any I read that case to say that there wasn't even error in the substantive instruction, not that the error was harmless. And I, that is a way the court could go here. We think that the, the substantive instruction is not quite right. And we would hesitate to have the court endorse it as correct because in the future we want district courts to change it a little, which is what we're requesting in current cases. The conspiracy instruction we're continuing to request and that courts are continuing to grant is the same. So I think the conspiracy instruction, because it requires knowledge of the unlawful purpose, joining the agreement willfully with the intent of further the unlawful purpose. So I think that those, when we've defined the unlawful purpose as with not a legitimate medical purpose, to know the unlawful purpose, to intend the unlawful purpose fully satisfies Ron. Right. Because otherwise to argue otherwise would require you to say knowingly or knowingly to ask the distribution, but not as to the rest of the sentence, which I suppose it's a possible construction, but it's a bit strange. I also think in a case like this, your honor, nobody, even if it's like plausible, nobody would have understood that to be the case, right? Because when you're talking about a doctor, everybody knows, right? The doctors can write prescriptions. And so I think everybody knows that to be unlawful, you have to be doing more than writing a prescription, right? It's not like the corner dealer who's handing out cocaine, which everybody knows is illegal, right? The doctor who's writing a prescription, we presume that that's legal. And the thing that makes it illegal, and this is what Ron said, is that it's not for a legitimate medical purpose. And so I think we're talking about unlawfully, everybody understands that the not for a legitimate medical purpose part is the thing that makes it unlawful because doctors write prescriptions. And pardon me if you've already addressed this, but now that I've caught up to your argument, do you have case law here or other circuits where they take this conspiracy language and use that essentially to, to, to render the substantive conviction harmless? Right. So I think the Ajayi case out of this court, which we filed the 28 J letter, does that, I think it's a little unclear, but I think it starts saying that it's not error and then it also says that it's harmless. Now we'll grant that there's also a Pinkerton instruction in that case on the substantive in counts. So it's a little different than here. I think in the Ron case on remand, the 11th circuit found the conspiracy instruction correct, which is also what happened in the Mencia case, which unpublished out of the 11th circuit. Mencia didn't have substantive counts in Ron. They did vacate the substantive counts, but I think that that's different than here because there the substantive counts were individual patients who were really unique. We were talking there about the particulars, about a special patient, about whether the treatment matched up. The doctors did examine the patients. There were, you know, contemporaneous prescriptions. It wasn't this pre-signed blank. I'm out of town. I've never met these people kind of thing like it was here. And so I think here on the facts, you have the same illegality flowing through the substantive counts and it's similar to the Martinez case of this court and Martinez is an error in the deliberate ignorance instruction on the substantive count and the court finds that the valid conspiracy instruction cures the defect because the conspiracy requires actual knowledge and therefore the jury found actual knowledge. And so the messy deliberate ignorance instruction didn't require reversal because we know the jury found actual knowledge. And I think that's the same here. We know the jury found actual knowledge. So there's intellectual consistency across that, but it sounds like this would be pathbreaking, not necessarily in a bad sense, but this is important as far as the government's concerned, this would be important new law to write. Yes. Yes. I think it is consistent with the threat of others. The next baby step in the scheme of things that because this is a new Supreme Court decision, like the cases are following, you know, in case there's another case upcoming in this court next month, Pierre, which presents the same question. There's also a 10th circuit case called Khan that vacated both. Yes, it did. And the argument in that case was purely on the overwhelming evidence of the substantive counts. The briefs don't address the conspiracy at all. The court addresses conspiracy in one clause of one sentence of its opinion. Yeah, but they vacated it. They did, but they didn't consider the argument at all. They didn't consider the conspiracy. That's the government's problem, isn't it? It is. And it's our fault. And we regret that, but here we are. And in this case, we are making that argument. There's nothing in this court's precedent that prohibits the court from following it. And I think indeed the IGI case gets us a long way there. And that's a published opinion from this court earlier this year. I want to kind of also explain a little bit about the skilling argument that we've made, which is another intellectual basis for this point, which is, so that's kind of the inverse situation, right? It's where there's gates, error, multiple objects of the conspiracy, one of which is invalid, but substantive convictions that were properly instructed. And then the court says, well, if you have substantive convictions that match one of the objects of the conspiracy, then we know that the jury found at least one of the valid objects of the conspiracy, even if they also found the invalid object. So affirming there. And I think that's the same happens in a series of RICO cases that we've cited in our brief, where even if the conspiracy count relied on multiple predicates, some of which might be invalid, if there are substantive convictions on at least two predicates, that that satisfies the RICO requirement of at least two. And so I think here it's, you know, a series of cases cited in our brief where the court talks about having necessarily found or the omitted element being inherent in either the scheme as it like factually had to be, or in instructions of another part of the case. And I think here again, it is also inherent in the facts of the case, right? Because of the way the conspiracy instruction. What is in, are you talking about guilt of conspiracy or substantive guilt being inherent in the facts? Now I'm talking about the substantive guilt, because the way the case was argued was entirely about knowledge. It was entirely about Qureshi's knowledge. And if the jury had believed his defense that he didn't know. Well, then there's no point in having instructions at all. If basically, well, there's fatal error in the instructions, but hey, everybody knew he knew. No, Your Honor. That's well, so two things. One is that if there is overwhelming evidence or the finding is inherent in the verdict, what's the conviction rate of the government when it goes to trial? I mean, 97% of the defendants are guilty, but there are rules. Yes, Your Honor. And I, so I want to clarify overwhelming evidence is one way, but also this is a case. The reason everybody argued this case as his knowledge is because the conspiracy instruction required us to prove his knowledge. So therefore he's guilty of the substantive count. Yes, because even though there's fatal error in the substantive counts, yes, the error is harmless. Your Honor, the error is harmless as it often is. And the error is harmless here because the thing that made those, the conspiracy over arches into, you could have, the argument is possible that he was in Dubai and that she did this without his authorization for those patients. Because later on, he does say he had to look at them, but you know, theoretically, so you can easily be not guilty of a few substantive things, but guilty of the overall conspiracy. I see I'm out of time. If you please, you can answer. Theoretically, that's true. On the facts of this case, it's not because the illegality, the unauthorized nature of the prescriptions is to issue pre-signed blank prescriptions that go to patients the doctor has never seen, which is exactly what happened in the four substantive counts and is the primary basis. You know what? My doctor is given prescriptions when he hasn't seen me. So you're talking, I mean, I understand the gravity of this case and the time. I just find it difficult to believe that you, you know, you're, that the guilt of the conspiracy, if that instruction holds up, necessarily means that every single substantive count for which he was charged means he's guilty. Your Honor, respectfully in. What's your best case? Well, you're, I mean, I'm not presiding. What's your best case to the contrary? Uh, that is Mencia, the 11th circuit case that had he not known the prescriptions were unauthorized, he could not have known the unlawful purpose of the plan. And I think respectfully, Your Honor, there are different rules for schedule two substances. Schedule two controlled substances have very special rules and they're tightly controlled and that's different from other types of prescriptions that can be authorized in less stringent manners. And there's no dispute about that here. There's no dispute that Qureshi signed these prescriptions. There's no dispute that Ayesha was not authorized to do it. There's no dispute on the substantive count. There's no dispute about that, Your Honor. If I could just point you to, um, he, uh, he knew the prescribing limits at 2788 to 89 of the record. Um, and that he understood the limitations of their, uh, agreement that she was not allowed to sign, um, controlled substance prescriptions that, that, uh, that she's not allowed to do it, that he knew that, uh, he did, he never saw these patients. You couldn't have run it. So their whole clinic was illegal from the get go. I mean, I thought he had applied with state authorities to run a pain clinic and that legally he could, I mean, I'm just taking this from the briefs and you're going way beyond what you've covered in your time. But, uh, my understanding of the briefs was that he, A, you can set up a pain clinic, B, you can have this person with this, uh, these initials of specialty prescribes, uh, uh, controlled substances. No. So she can do your author is under your direction and control. She can prescribe up to the schedule three prescriptions, which is why she writes the Soma prescriptions. Every single one of the Norco prescriptions is signed by Dr. Qureshi, which he admitted there. That's because the rules require a doctor and only a doctor to issue schedule two prescriptions. And the patients that happen while he's in Dubai, he, um, he admits at 2788 to 81 of the record that he had no information about these patients. When those prescriptions were issued, he pre-signed the special schedule two forms before he left the country. Can I just ask a clarifying question, uh, your theory about the, given how these different instructions were written, uh, uh, you've therefore not only have a good conspiracy instruction, but essentially cures any harm on the other side, is that a categorical argument based on the words of the jury instruction, or are you simply saying that given the evidence in this case? So I think you could have a case where, um, the substantive counts are, so like say that the clinic has mixed, right? It's like some good and some illegal, right? And some illegal is enough to get you a conspiracy. Okay. But then the substantive counts are about individual prescriptions. Okay. And so then there's a dispute about whether those individual prescriptions are on the good side of the line or the illegal side of the line. Conspiracy just means you've agreed generally, you have to look at, okay. And so on the facts of this case, you're saying because of the facts of this case, the substantive counts do happen to map on, exactly, exactly. That's because of the what? The pre-signed prescriptions, the never seeing the patients, um, which is the pre-signed prescriptions itself is inherently illegitimate. Um, and you're saying you have a pattern of behavior here that sets all the substantive counts, right? And it's not just like a pattern. It's the same specific pattern for that makes the conspiracy, a conspiracy. And that makes the substantive. You know, this is just, I mean, I appreciate the factual detail here, but this is just not what you argued in your brief. You argued in the general sense, this was about harmless error. So I, we argued that the instructions required knowledge. And I think the point I'm making here is it's also, we make a long harmlessness argument about the facts, which is that ties together the overall illegality of the conspiracy with the specific illegality of these four counts, which is, um, and you can see the summary of the evidence from those at 2428 to 2456, which is the expert witnesses overview of the four specific patients that maps it on exactly to the things that make the whole conspiracy illegal. The doctor shopping, the traveling long distances, the pre-signed prescriptions that Dr. Qureshi never saw these people. And these four prescriptions were written while he was in Dubai. He had no information about these people. The defendant or the victim in count four victim, the patient in count four, um, was a new patient to the clinic. So it's not even somebody with whom he could have arguably had a preexisting patient relationship. Um, that there's things about these records that make them inherently, um, illegitimate that if you, the, the intake and the diagnosis on count three don't match that the, um, well, I'll tell you where I got confused. And that is he admitted he knew Ayesha could not prescribe schedule two controlled substances, which included hydrocodone after October, 2014. That's correct. The regulation changed in October, 2014. And the substantive patients I would just point out happened in March of 2015. So, you know, more than six months after that change in law, a point at which he knew that she was not allowed to do that. And you'll see that in advance of that regulation changing in September, 2014, he orders 180, a hundred prescription pads of the schedule too. But that doesn't, but again, arguing from the gross to the particular doesn't persuade me because you have to convince us of the particular. Right. And I just want to, I mean, I think if, if the jury had believed him that he genuinely thought pre-signed schedule two prescriptions without him knowing anything about a patient were legitimate, it would have acquitted him on the conspiracy. It would have acquitted him on the substantive counts. There is do funny things sometimes. I understand that your honor, but here, the jury, why you instruct them differently for different claims. I agree, your honor. I think the knowledge that was required for the conspiracy is the same knowledge that's required for the substantive counts and the jury inherently found that he knew it was unauthorized. We thank you and ask that you affirm. Mr. Seacrest, do you want additional time? Thank you. I'll try to stay with what I have. I do want to point out, uh, and disabuse the government of their position in their brief that this jury instruction issue is subject to an abuse of discretion standard. It is not, it is a de novo review standard, uh, clearly by the cases of this court and beyond that, because it's non-structural constitutional error, it's incumbent upon the government to prove beyond a reasonable doubt, any harmless error, uh, and, and I would be remiss to say that I don't think I've ever seen a case where the government hasn't argued harmless error. That's, that's, that's the fallback position. I get it. But, uh, the reality is once again, if we, if we parse and we look at the conspiracy instructions that were given in this case, the court said as to the more persons directly or indirectly reached an agreement to unlawfully distribute or dispense a control substance, not for legitimate medical purpose or not in the usual course of professional practice. Again, nowhere, nowhere in the jury instructions did the court apply the requisite culpable mental state that separates wrongfulness from innocence to the gravamen of the object offense, which is not for a legitimate medical purpose or not in the usual course of professional, professional practice as required by rule on. As to the second element of conspiracy, the jury was instructed. It had to find that the defendant knew of the unlawful purpose of the conspiracy. Of course, here, the unlawful purpose of the alleged conspiracy was to this case would require a finding beyond a reasonable doubt that the defendant agreed to knowingly or intentionally act in an unauthorized manner. The jury's never instructed with respect to that. That's the rule on error that infects the substantive counts and by the courts, the court, I mean, Judge Hoyt, by his, uh, uh, utilization of the exact language that he used in the substantive counts back into the conspiracy charge, that's what this jury was instructed. Uh, also, uh, I, I would be remiss, uh, that the, the government cited Martinez, the state, uh, as somehow aiding its argument, but as I noted in the reply brief footnote five, with respect to United States Martinez, uh, uh, the court found harmlessness, but also the district court failed to provide an intelligible standard of proof in a discrete part of the instructions. The correct standard was stated elsewhere. So in that case, the court found harmless error, the Martinez case, because in fact, the correct standard was found elsewhere in the jury instructions. In this case, the, the Ruan, uh, error infects the substantive counts and it was, uh, picked up by the court and plugged right back into the conspiracy counts of nowhere in the jury charge is the jury instructed, uh, with respect to the, the obligation it had to find based upon the Supreme Court's decision in Ruan, I was going to say that I would be remiss if I didn't, uh, comment briefly about United States versus, uh, Jayhi. This is a per curiam opinion in this court. Uh, and it's a subject of the letter brief that I filed on May the 31st. So it's before this court, but this, this court was very clear in a Jayhi that the holding was limited and I quote to the specific facts of this case. And also this court held, and I quote, they found it quote, significant that the defendant in a Jayhi conceded that the conspiracy jury instructions were adequate, we don't concede that. These jury instructions in fact, were not adequate. I also point out, uh, that part of the harmless error determination with respect to a Jayhi, uh, also, uh, can you, one can consider, if you look at the jury instructions that he actually got in the district court, there were far more favorable than we got in our clay, in our case, the jury instruction by the district court in a Jayhi explicitly instructed the jury that the defendant only violated the law. If he knew that the prescriptions he filled were outside the usual course of the prescribing doctor's practice, not that he knowingly filled a prescription that was outside the usual course of the prescribing doctor's practice. In addition, the district court instructed the jury in a Jayhi that it must decide whether the controlled substances were prescribed for what the defendant subjectively considered to be a legitimate medical purpose. And of course, in this case, good faith, uh, jury instruction required the jury to employ an objective, reasonable person standard, the reasonable, uh, practitioner in the United States. So it didn't delve at all into the culpable mental state, uh, of the defendant. Uh, so my time is up. I just want to say, uh, in closing that, uh, this business, I mean, the government concedes that the substantive counts are flawed. In fact, they not only are flawed, but they're fatal. And that error, that specific Ruan problem that infected the substantive counts was imported directly into the conspiracy charge and any reading or manipulation or thinking of what the evidence was or what Dr. Qureshi must have known does not, uh, remedy the error. And I, uh, I don't have the time. I won't bore the court, but we have explicitly gone into rich detail as to why, in fact, the, the error is not harmless. This is not a Nieder versus United States case where there was uncontroverted. Um, uh, no, you know, the, the, the, the element was uncontroverted. In this case, there, the, the, uh, the essential issue in the case was hotly contested, was very controverted. Uh, we're not arguing the evidence was legally insufficient, but we're arguing based upon, uh, uh, what happened in this case, there's substantial error that undermined the, uh, integrity and fairness of the proceedings and we asked that the case be reversed and remanded to the district court for a new trial. Thank you for your time and attention.